UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUGH M. ROSENTHAL,

        Plaintiff,                              Civil Action No. 14-CV-12384

vs.                                                HON. MARK A. GOLDSMITH

NATIONAL BEVERAGE CORP., et al.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 54) AND DENYING, AS MOOT, PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 55)**

Plaintiff Hugh Matthew Rosenthal first began providing marketing services to Faygo Beverages, Inc. ("Faygo"), a subsidiary of National Beverage Corporation ("NBC"), in 1992. He did so continuously, although on a part-time basis in later years, until Faygo terminated its relationship with him in July 2012. Following his termination, Plaintiff filed a complaint in this Court alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2201, et seq.

Upon completion of discovery, the parties filed cross-motions for summary judgment — Defendants seeking judgment on all claims, and Plaintiff seeking a ruling that he was an employee and not an independent contractor. While the parties' briefs raise several issues, the Court concludes that the answers to all those issues are irrelevant for disposition of the case, except for the following: Whether Defendants have offered legitimate and non-discriminatory reasons for terminating Plaintiff's services, and whether Plaintiff has demonstrated that those reasons were mere pretext. The Court concludes that Plaintiff has failed to shoulder his ultimate

burden to prove a genuine issue of material fact that his age was either a "but-for" cause or a motivating factor in the adverse decision. Accordingly, the Court grants Defendants' motion and denies Plaintiff's motion, as moot.

## I. BACKGROUND

In 1992, Faygo was using an outside vendor for its marketing services; Plaintiff was employed by that vendor and managed Faygo's account. Defs. Mot. at 2 (Dkt. 54); Pl. Resp. at 1 (Dkt. 58). Faygo then terminated its contract with the vendor, in favor of using just Plaintiff's services. Defs. Mot. at 2; Pl. Resp. at 1. To that end, Plaintiff formed a company called "Rosenthal & Company Advertising" ("RCA"), which then entered into an agreement with Faygo under which RCA would provide Faygo with certain advertising and marketing services. Defs. Mot. at 2-3; Pl. Resp. at 1, 6. See also Agreement, Ex. B to Defs. Mot. (Dkt. 54-3). Plaintiff was not paid directly by Faygo; rather, Faygo paid RCA twice a month, and RCA in turn paid Plaintiff a salary. Pl. Resp. at 6; Defs. Reply at 1 (Dkt. 61).

In January 2008, Plaintiff approached Al Chittaro, Executive Vice-President of Faygo, about reducing his work schedule from five to three days a week. Defs. Mot. at 3; Pl. Resp. at 1. Chittaro agreed, and Faygo began paying RCA a reduced monthly amount. Defs. Mot. at 3; Pl. Resp. at 1.

In July 2011, Chittaro worked with NBC's Human Resources Department to create a job description for a position entitled "Brand Manager," which was publicly posted in November 2011. Defs. Mot. at 10; Pl. Resp. at 11; Defs. Reply at 6. Plaintiff learned of the posting around that same time. Pl. Resp. at 11. The parties dispute the nature of the posting and the position. Defendants assert that it was an entirely new, internal position. Defs. Mot. at 9, 10; Defs. Reply at 6. Plaintiff argues that he was being replaced. Pl. Resp. at 11. Regardless, less than a year

later, on July 24, 2012, Chittaro terminated Plaintiff's services. Defs. Mot. at 10; Pl. Resp. at 12. Plaintiff was 68 years old at the time. Pl. Resp. at 12. Josh Bartlett, 37 years old, was ultimately hired for the position of Brand Manager, and remained in that position for less than a year before he was fired. Defs. Mot. at 10; Pl. Resp. at 13; Defs. Reply at 7. In May 2013, Plaintiff filed a charge of unlawful age discrimination with the Equal Employment Opportunity Commission. Defs. Mot. at 11; Pl. Resp. at 5. This suit followed.

## II. STANDARD OF DECISION

Pursuant to Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment motion,

> credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 374 (6th Cir. 2009) (brackets omitted).

When a defendant moves for summary judgment, it "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "To withstand summary judgment, the nonmoving party must present sufficient evidence to create a genuine issue of material fact." Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004). The nonmoving party "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."

3

Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

### III. ANALYSIS

Plaintiff brings his claims of age discrimination pursuant to the ADEA and Michigan's ELCRA. The manner of adjudication is similar under both statutes: unlawful discrimination may be shown by way of direct or circumstantial evidence, the latter of which is typically analyzed under the familiar McDonnell Douglas burden-shifting framework. Tilley v. Kalamazoo Cnty. Road Comm'n, 777 F.3d 303, 307-308 (6th Cir. 2015). Plaintiff does not purport to offer direct evidence of age discrimination, but, rather, presents his case using the McDonnell Douglas scheme.

Under McDonnell Douglas, a plaintiff must first establish a prima facie case of age discrimination by demonstrating: "1) that he was a member of a protected class; 2) that he was discharged; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class." Geiger v. Tower Auto., 579 F.3d 614, 622 (6th Cir. 2009). Once he does this, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. See Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 814 (6th Cir. 2011). If the employer provides one, the presumption of discrimination generated by the plaintiff's prima facie case falls away, and the plaintiff must demonstrate that the given reason was mere pretext for discrimination. Id. at 815. This third stage merges with

4

the plaintiff's ultimate burden to show that he was the victim of intentional and unlawful discrimination. Id. at 812.[1]

The parties see this case very differently and agree on very little. For instance, Defendants are adamant that Plaintiff was not an employee, but instead an independent contractor, whose services to Faygo were governed by the 1992 contract between Faygo and RCA. See Defs. Mot. at 13-16; Defs. Reply at 9-10. Plaintiff takes a different stance, contending that he was Faygo's employee once RCA was formed. See Pl. Resp. at 18-23. Defendants also assert that Plaintiff was not replaced by someone outside of the protected class, because the Brand Manager role for which Bartlett was hired "was greatly expanded beyond that which RCA did for Faygo under the Agreement," and further contend that even if Plaintiff was replaced, he was not qualified for this newly expanded role. Defs. Mot. at 17.

However, these disagreements are irrelevant because of a fundamental defect in Plaintiff's case. Even assuming Plaintiff could overcome all of Defendants' other challenges to his claim and establish a prima facie case of discrimination, Defendants have offered legitimate, non-discriminatory reasons for his termination, and Plaintiff has not offered evidence creating a genuine issue of material fact that those reasons are pretext for age discrimination.

Defendants offer the following reasons for why Chittaro terminated Plaintiff's services: (i) Chittaro "needed someone who would make his job easier, not harder"; (ii) "Plaintiff was snarky with other employees and [Chittaro] was tired of cleaning up Plaintiff's messes"; (iii) "Plaintiff would not do that which [Chittaro] asked him to do," namely, provide additional support to outside marketing teams and the Faygo sales staff; (iv) Chittaro "wanted to expand the

---

[1] This third and final step reflects a divergence in the otherwise parallel standards under federal and Michigan law. While the ADEA requires a "but-for" causation standard, under Michigan's ELCRA, a plaintiff need only "prove that the defendant's discriminatory animus was a 'substantial' or 'motivating' factor in the decision." Provenzano, 663 F.3d at 818. This divergence, however, is irrelevant, because Plaintiff cannot satisfy either of these burdens.

marketing function to include the duties on the brand manager job description"; and (v) "with the growth of social media, [Chittaro] could not trust Plaintiff to respond appropriately to posts by consumers." Id. at 19. These reasons find evidentiary support within the record.

For instance, Chittaro wanted Plaintiff to be more proactive on the sales front, by assisting sales staff with marketing strategies to drive the brand and providing sales staff with access to marketing information they would not otherwise have; Chittaro did not feel that Plaintiff was delivering on that front. Chittaro Dep. Vol. 2, Ex. 4 to Pl. Resp., at 280-281, 285-291, 294 (Dkt. 58-6). Chittaro also asked Plaintiff to assist with marketing efforts in the southeastern markets, and to collaborate with "another division [to] promote and support [the] brand." Id. at 248-249. Specifically, Chittaro wanted Plaintiff to develop ideas for cross-marketing programs, as well as to offer his assistance to individuals within those other markets. Id. at 250, 252, 254-255. However, Chittaro received complaints from marketing individuals that Plaintiff's assistance always came with a cost, usually in the form of negativity or sarcasm. Id. at 255-256. In addition to sarcasm, other common complaints concerned Plaintiff's unapproachability, his unwillingness to help, and not being a team player. Chittaro Dep. Vol. 1, Ex. 6 to Pl. Resp., at 46, 58-59, 62, 66 (Dkt. 58-8).

Defendants include with their motion several emails sent by Plaintiff to influential employees of NBC and its various subsidiaries, which could be construed as disrespectful or disparaging of others. See Ex. J to Defs. Mot. at 7, 9, 13-14, 15 (cm/ecf pages) (Dkt. 54-11); Ex. M to Defs. Mot. (Dkt. 54-14). For example, Vanessa Walker, an NBC employee, asked Plaintiff about his marketing plans for Faygo in southeastern markets, noting that the area comprised a large portion of Faygo's sales, to which Plaintiff responded in a sarcastic fashion, and then forwarded Walker's response, which expressed surprise at Plaintiff's tone, to another NBC

6

employee along with a disparaging remark. Ex. J at 13-14 (cm/ecf pages).[2] Chittaro testified not only that the email was inappropriate, but that he also found it problematic that Plaintiff's response stated that Plaintiff knew nothing about Faygo's sales in that market. Chittaro Dep. Vol. 2 at 351. Chittaro cited this as an example of Plaintiff resisting efforts to expand Faygo marketing beyond traditional markets and to collaborate with the broader NBC marketing team. Id. at 328-329, 352-353; see also Chittaro Dep. Vol. 1 at 67-69. Other emails reflect Plaintiff's inability to conduct himself with requisite professionalism. See Ex. M (rude and sarcastic email to NBC's in-house legal counsel in response to an inquiry over a legal matter); Ex. N to Defs. Mot. (Dkt. 54-15) (disparaging and condescending email Plaintiff proposed to send to NBC's senior human resources advisor); Ex. O to Defs. Mot. (Dkt. 54-16) (rude and unprofessional email to third-party vendor).[3]

---

[2] Walker specifically asked, "knowing Dennis' area is a large part of the Faygo brand sales now.do [sic] you have anything planned for the 'Bible belt'? How can you integrate his accounts in some of your overall plans?" Ex. J at 14 (cm/ecf page). Plaintiff responded, "Actually, I don't know anything about Dennis' area, or what his sales are. NBC doesn't share much with us strangers in Detroit. I did reach out to him a few months ago, and he asked for a handful or [sic] coupons. I guess he doesn't need/want/can afford/or value what we Yankees do, and I am certainly not in any position to force things on him." Id. at 13 (cm/ecf page). Walker's response stated, "Interesting. . . I'm at a loss. I think he's bound to need something though. The brand has tremendous legs in his neck of the woods…" Id. Walker's initial email and her response were each forwarded by Plaintiff to Brent Bott, accompanied by comments such as, "She's pretty good at creating work for others, Isn't she?", id. at 15 (cm/ecf page), and "She doesn't have enough to do?", id. at 13 (cm/ecf page).

[3] Relevant portions of those emails include the following:

- In what appears to be a response to an inquiry from NBC legal counsel regarding Plaintiff's relationship with the owner of a bakery that seems to have partnered with Faygo to produce Faygo-themed cupcakes, Plaintiff ended an email averring that he had no prior relationship with the owner by stating, "Finally, I, [Hugh] Matthew Rosenthal, do hereby swear, aver, and state, that I am more than a little peeved at the implication." Ex. M at 3 (cm/ecf page). Counsel responded that she was "sorry that [he was] peeved," and explained that it was part of her job to conduct inquiries into matters that may compromise the company's interests, but in light of Plaintiff's representations the company could move forward to make Faygo-cupcakes a positive thing for the company.

Chittaro further explained that "the way [Plaintiff] worked with the marketing team in Fort Lauderdale . . . made [Chittaro's] job tougher," because Chittaro would have to "take the calls" and "fix and soften however [Plaintiff] responded." Chittaro Dep. Vol. 1 at 95-96.

Finally, Chittaro testified that "[y]ears of knowing [Plaintiff]," to be "sarcastic in nature," made him concerned about how Plaintiff might respond to consumer posts via social media, although Chittaro could not recall a specific instance where Plaintiff was inappropriate to a consumer on a social media platform in the past. Id. at 43-45.

In sum, Chittaro was dissatisfied with Plaintiff's services — an appropriate, non-discriminatory explanation for termination. See Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 588 (6th Cir. 2002) ("Terminating an employee because he fails to perform satisfactorily is a legitimate and nondiscriminatory reason to end his employment."); Brown v. Ohio State Univ.,

---

Id. at 2 (cm/ecf page). In reply, Plaintiff wrote, "Actually, 'peeved' is an enormous understatement, and I do not see any 'fun' in the implication. Nonetheless, your weak apology is accepted." Id.

- In a proposed follow-up email to a human resources employee who evidently failed to timely inform Plaintiff that the manner in which he requested the exercise of certain options was not the appropriate method, resulting in Plaintiff not being eligible to receive newly announced dividends, Plaintiff wrote: "Now, after calming down, I am writing to you to tell you what a miserable job you did. . . . To use Joe's metaphor, I believe you are in the wrong seat on the NBC bus. I believe your uncaring attitude makes you unfit to handle this responsibility any further, and you should request to be relieved of this responsibility." Ex. N.

- In response to a vendor's update on delivery times for what appears to be a delayed shipment of glass bottles, Plaintiff wrote: "The art has not changed. Neither has Vitro's miserable level of service. It's pretty clear you guys have no clue what you are doing. . . . I think you are handing us a line of BS while you continue to fill other customers' orders. . . . Pretend you care and make sure this happens before they are produced." Ex. O.

- Plaintiff was requested to assist Faygo employees in the southeastern market with a project; Plaintiff then responded that he did not know what project the requestor was talking about and was told essentially to disregard the request. Ex. J at 7 (cm/ecf page). Plaintiff then wrote: "Are you deliberately messing with me? Look out for random golf balls in Traverse City." Id.

8

616 F. Supp. 2d 740, 751 (S.D. Ohio 2009) ("Reasons such as lack of leadership and management skills, the failure to accept problems within her responsibility, untimely completion of assignments, and poor communication are legitimate non-discriminatory reasons for an employee's demotion or termination."), aff'd, 385 F. App'x 486 (6th Cir. 2010). Insolence and an inability to get along with co-workers are also legitimate and non-discriminatory reasons for termination. See Adams v. Tenn. Dep't of Fin. & Admin., 179 F. App'x 266, 274 (6th Cir. 2006) (plaintiff's "inability to work with his co-workers and his blatant insubordination were legitimate reasons compelling the [defendant's] disciplinary actions"); Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1082 (6th Cir. 1994) (that plaintiff was "argumentative and confrontational with superiors and co-workers" was an age-neutral basis for termination), overruled on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009); Nishi v. Siemens AG, 290 F. Supp. 2d 772, 781 (E.D. Mich. 2003) ("Courts recognize that personality conflicts between and amongst co-workers generates a non-discriminatory motive for making certain employment decisions.").

In light of these reasons, the burden shifts to Plaintiff to demonstrate that Chittaro's reasons are pretextual. Pretext can be proven by demonstrating that: (i) the offered justifications had no basis in fact; (ii) the proffered reasons did not actually motivate the decision; or (iii) the reasons were insufficient to motivate the action. E.g., Succarde v. Fed. Express Corp., 106 F. App'x 335, 339-340 (6th Cir. 2004).

Plaintiff does not expressly frame his argument on pretext using these well-known categories. Rather, he argues that while Chittaro claims that Plaintiff was difficult to get along with, and did point to Plaintiff's "sarcasm [sic] 'tone'" as an area of concern, Chittaro also testified that Plaintiff had been this way for a long time, yet he waited eight years before

9

terminating the contract. Pl. Resp. at 16. Plaintiff also argues that many of the allegedly inappropriate comments Defendants now cite in support of their non-discriminatory rationale were sent to Chittaro and Alan Domzalski, whom Plaintiff counted among his friends. Id.[4] Plaintiff also points to certain remarks addressing Plaintiff's work product as circumstantial evidence of age discrimination, because those comments invoked language indicative of age bias, such as "traditional" and "set in his ways," and are not supported by any evidence that Plaintiff's methods were actually problematic. Id. Finally, Plaintiff claims that his preference to work part-time could not have formed a legitimate basis for termination, because Plaintiff offered to return to full-time work, and Chittaro waved that offer aside. Id. at 17.

Given these arguments, Plaintiff's pretext theory appears to be that the given reasons did not actually motivate the termination decision.[5] "[T]to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of age discrimination." Manzer, 29 F.3d at 1084. Importantly, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original).

However, just one of Plaintiff's arguments regarding pretext — the language allegedly reflective of age bias, which the Court addresses infra — speaks to an unlawful age animus.

---

[4] Alan Domzalski is the Chief Financial Officer of Faygo and the Chief Operating Officer of Sundance Beverage Company, a separate brand also owned by NBC. Domzalski Dep., Ex. 5 to Pl. Resp., at 5 (Dkt. 58-7).

[5] To show that the given reasons had no basis in fact, plaintiffs must provide "evidence that the proffered bases . . . never happened, i.e., that they are 'factually false.'" Manzer, 29 F.3d at 1084. To show that the proffered reasons were insufficient, plaintiffs ordinarily submit "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." Id. Plaintiff has not undertaken either of these tasks.

Plaintiff may disagree with Chittaro's reasons for terminating his services, or even find them lacking, but "[t]he ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." <u>Gatch v. Milacron, Inc.</u>, 111 F. App'x 785, 789 (6th Cir. 2004) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000)). "It is not enough . . . to <u>dis</u> believe the employer; the factfinder must <u>believe</u> the plaintiff's explanation of intentional discrimination." <u>Hicks</u>, 509 U.S. at 519 (emphasis in original).

Plaintiff's response offers the following evidence that attempts to connect Plaintiff's ultimate termination to the proscribed motivation: (i) questions about Plaintiff's retirement plans from various colleagues and/or supervisors, Pl. Resp. at 10; (ii) articles on advanced-age related health topics sent from NBC to Plaintiff, <u>id.</u>; and (iii) remarks that Plaintiff's methods were "traditional," and that Plaintiff was "set in his ways," <u>id.</u> at 16. The Court addresses each in turn.

Chittaro asked about Plaintiff's retirement plans approximately two to three times a year during the last three to four years of Plaintiff's relationship with Faygo. Rosenthal Dep. Vol. 1 Part 1, Ex. 1 to Pl. Resp., at 19, 22, 26-27 (Dkt. 58-2). The questions began around 2008 or 2009, <u>id.</u> at 22, the same time period in which Plaintiff reduced his work schedule to three days a week, <u>id.</u> at 58. Plaintiff testified that Chittaro never made any other comments to Plaintiff regarding retirement (<u>i.e.</u>, that Chittaro wanted Plaintiff to retire, or that Plaintiff should consider retiring) or about Plaintiff's age in general. <u>Id.</u> at 27. Plaintiff was not of the impression that Chittaro was concerned about "succession planning," nor that he was encouraging Plaintiff to leave; rather, Plaintiff thought that Chittaro was inquiring out of "personal interest[,] perhaps." <u>Id.</u> Joe Caporella asked Plaintiff about his retirement plans at annual Traverse City meetings,

beginning around 2004 and every year thereafter up to and including 2011. Id. at 28-29, 33; see also Rosenthal Dep. Vol. 2, Ex. 3 to Pl. Resp., at 240-242 (Dkt. 58-5) (Plaintiff testifying that Caporella asked Plaintiff about retirement more than anyone, annually at the Traverse City meetings for about six years prior to Plaintiff's termination).[6] Approximately every three months and over their near daily lunches, Alan Domzalski would casually ask if Plaintiff was thinking of retiring. Rosenthal Dep. Vol. 2 at 242-243 ("It was kind of a brief thing, you know, 'Are you thinking of retiring?' 'No, I like it.'"); see also id. at 279. Notably, Plaintiff does not accuse Domzalski of having an age bias against Plaintiff. Id. at 279. Finally, Plaintiff's retirement "popped up in the conversation periodically" with Brent Bott. Id. at 243-244.[7] Bott's questions began around 2006-2007 and occurred approximately four times a year. Id. at 244 (Plaintiff and Bott would talk about once a month or every six weeks and it would come up about every three times they talked). Plaintiff testified that to all of these inquires he always responded that he enjoyed his job and had no plans to retire. Pl. Resp. at 10.

As an initial matter, the Court has not been presented with any evidence that Domzalski or Bott had any input in the decision to terminate Plaintiff's contract. Accordingly, because they are not decision-makers, their statements cannot constitute evidence of age discrimination. See Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 550 (6th Cir. 2004).

---

[6] Joe Caporella is President of NBC and son of Nick Caporella, Chairman of NBC. Caporella Dep., Ex. 8 to Pl. Resp., at 8-10 (Dkt. 58-10).

[7] Brent Bott's exact role within the NBC organization is unclear. However, he has been described as Nick Caporella's "right-hand person," Chittaro Dep. Vol. 2 at 351, and he also appears to have played a role in consumer marketing, Rosenthal Dep. Vol. 1 Part 1 at 29, 118.

With regard to Chittaro and Caporella, there is no evidence that the inquiries were anything other than just that — inquiries.[8] There is no indication that the questions suggested Plaintiff ought to retire, or that they were meant to pressure Plaintiff into retiring. Moreover, none of the inquiries incorporated any actual reference to Plaintiff's age.

Mere inquiries, without more, are insufficient to establish an inference of discrimination. Woythal v. Tex-Tenn Corp., 112 F.3d 243, 246-247 (6th Cir. 1997) (distinguishing between friendly or mere inquiries versus questions that amounted to pressure or suggestions to retire); Sander v. Gray Television Grp., Inc., 478 F. App'x 256, 265 (6th Cir. 2012) (holding that "questions about [employee's] impending retirement," failed to rebut the employer's non-discriminatory reason for termination, particularly considering employee admitted that he did not know whether questions were for a legitimate purpose, in concluding overall that the plaintiff had not established a genuine issue of material fact regarding pretext); Anderson v. U.S. Bank Nat'l Ass'n, No. 2:14-cv-2167, 2016 WL 3640692, at *9 (S.D. Ohio June 29, 2016) (finding retirement comments "minimally probative of pretext" because "inquiries into retirement plans do not generally constitute evidence of discrimination" absent evidence that the "questioning is egregious or incorporates some type of direct reference to age," but concluding that the plaintiff had demonstrated pretext by creating a genuine issue of material fact through other evidence).

The repeated nature of the inquiries does not increase their probative worth, considering that they occurred just a few times a year, and, again, because there is no suggestion that the

---

[8] Defendants insist that the decision to terminate the contract was Chittaro's alone, and that Caporella had no input into that decision. Defs. Mot. at 23-25. Plaintiff has not offered any evidence in his response to actually rebut that notion, but counsel for Plaintiff at oral argument pointed to testimony by Chittaro indicating that Chittaro likely would not have terminated Plaintiff's contract over Caporella's objection. See Chittaro Dep. Vol. 1 at 156. Although failing to raise this argument in Plaintiff's response technically waived it, the comments by Caporella — even if he were deemed a decision-maker — do not give rise to an inference of age-based discrimination, as discussed infra.

frequency amounted to pressure for Plaintiff to retire. Mastellone v. Publix Super Mkts., Inc., -- F. Supp. 3d -- , No. 3:14-CV-433-TAV-HBG, 2016 WL 1328922, at *9 (E.D. Tenn. Apr. 5, 2016) (holding that "[t]he fact that employees mention or ask about retirement is not evidence of age discrimination," and therefore not finding sufficient evidence of discriminatory animus on the part of a supervisor who "frequently asked plaintiff about his retirement plans"); Spence v. Potter, No. 1:07-CV-00526, 2010 WL 518179, at *15-16 (S.D. Ohio Feb. 3, 2010) (holding, in the alternative, that plaintiff failed to proffer sufficient evidence for "a reasonable jury [to] find that but for Plaintiff's age he would not have been constructively discharged," where plaintiff was asked on more than one occasion when he was going to retire (emphasis in original)), aff'd, 515 F. App'x 561 (6th Cir. 2013); Reynolds v. Ga.-Pac. Corp., No. C-1-03-459, 2006 WL 212069, at *5 n.4 (S.D. Ohio Jan. 25, 2006) (supervisor's repeated questions about retirement not circumstantial evidence of discrimination when they were not discriminatory on their face and temporally removed from the actions in issue). The fact that the inquiries had been ongoing for a number of years cuts against evidence of animus; had the inquiries been truly reflective of age bias, termination would have likely occurred within a shorter timeframe.

With respect to the alleged articles referencing age-related health ailments, it appears that these articles were part of a "wellness plan document." Rosenthal Dep. Vol. 1 Part 1 at 30-31. Plaintiff acknowledged that "part of the intent [of the articles was to cover various health topics], but the fact at that point, [he] took them to be more than that." Id. at 31. Plaintiff did not know whether the emails were distributed to all NBC employees, but he had no reason to believe it was pinpointed strictly to him, other than "it felt like it." Id. at 31-32. But subjective feelings cannot provide a basis for an inference of discrimination. Hein v. All Am. Plywood Co., Inc., 232 F.3d

482, 490 (6th Cir. 2000) (subjective interpretation that employer's action was a comment on plaintiff's age insufficient to establish pretext).

Finally, the alleged veiled references to Plaintiff's age, by referring to Plaintiff's methods as "traditional," and a statement that Plaintiff was "set in his ways," were all made by non-decision-maker Dawn Burch during her deposition in this case, well after the actual termination decision. See Burch Dep., Ex. 19 to Pl. Resp., at 46-50, 59-69 (Dkt. 58-21).[9] There is no evidence that would make these comments attributable to either Chittaro or Caporella. Therefore, this too is insufficient to establish an inference of discrimination. Rowan, 360 F.3d at 550.[10]

Because Plaintiff has failed to connect the alleged age-based remarks to his later termination, he has not raised an issue of fact that age was the "but-for" cause of his termination. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1395 (6th Cir. 1993) ("Where, as here, Plaintiff cannot establish a nexus between the allegedly age-based action and his later firing, no claim of discrimination will lie."). This failure also dooms his ELCRA claim. Sniecinski v. Blue Cross & Blue Shield of Mich., 666 N.W.2d 186, 193 (Mich. 2003) ("Under . . . the McDonnell Douglas test, a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision.").

The failure to establish an inference of age discrimination dooms Plaintiff's non-age related pretext arguments, but they lack merit, in any event. While a number of the "snarky"

---

[9] Dawn Burch was Al Chittaro's former executive assistant, who took over the responsibilities of Josh Bartlett, the original hire for the Brand Manager position, after Bartlett was fired. See Burch Dep. at 13, 34-35.

[10] In any event, Chittaro testified that he did not have any concerns about Plaintiff's ability to learn social media; rather, he was concerned about the appropriateness of what Plaintiff would put on social media, in terms of his interactions with the consumers based on Plaintiff's previous interactions with both colleagues and third parties outside the company. See Chittaro Dep. Vol. 2 at 295-297.

emails cited by Defendants did go to only Chittaro or Domzalski, Plaintiff's friends, other objectionable emails were sent to high-ranking employees of NBC or outside third-parties. See, e.g., Ex. O; Ex. M. And while Chittaro may have been a friend to Plaintiff, he was also an officer of Faygo and entitled to consider Plaintiff's overarching attitude and professionalism in the workplace, including toward NBC in particular, when evaluating the future of Plaintiff's relationship with Faygo.

As for Plaintiff's offer to return to full-time work as a remedy to Chittaro's commitment concerns, Chittaro testified that the issue with Plaintiff's work was both quality (in terms of performance) and quantity (number of hours); thus, Plaintiff's willingness to return to full-time work was irrelevant because it would not address the remaining quality issues, such as Plaintiff's resistance to expanding the marketing role or his overall attitude. See Chittaro Dep. Vol. 2 at 316-319, 368-369. Chittaro further testified that he feared if Plaintiff were to return to full-time work, Faygo would be paying more while receiving the same amount of work as when Plaintiff was part-time. Id. at 318.[11] Plaintiff's overall disagreement with Chittaro's assessment of his performance, or whether Plaintiff was providing the value Chittaro expected, does not render Chittaro's explanation pretextual. See Lefevers v. GAF Fiberglass Corp., 667 F.3d 721, 725-726 (6th Cir. 2012).

Plaintiff argues that summary judgment must be denied, because an employer's concern with an employee's "tone of voice or manner of speaking" is too subjective to be accepted without a trial. Pl. Resp. at 17 (citing Yazdian v. ConMed Endoscopic Techs., Inc., 793 F.3d 634

---

[11] Indeed, when Plaintiff reduced his schedule from five to three days a week, he resisted a cut in RCA's compensation, explaining to Chittaro that he could do the same amount of work in three days that he previously did in five, while maintaining the same quality of work product. Rosenthal Dep. Vol. 1 Part 1 at 57-58.

16

(6th Cir. 2015)). Yazdian, however, was a very different case from ours, and nothing in its pronouncements or analysis bars summary judgment in this case.

In that Title VII case, the court reversed a grant of summary judgment, finding a question of fact whether the employer had retaliated against the plaintiff for engaging in protected activity, viz. the plaintiff's complaints to his supervisor about a hostile work environment and threats to sue. The court found there to be direct evidence of retaliation, because the termination decision was made immediately after the plaintiff had made the protected statements to his supervisor, and the supervisor had acknowledged that the decision was made because of the statements. Yazdian, 793 F.3d at 648. The defendant had argued that the termination was based on the plaintiff's combative "tone," i.e., his "communication style, rather than substance." Id. at 649. However, the Sixth Circuit reasoned that there were two reasonable interpretations of the evidence — that the plaintiff was terminated because of his tone or because of his stated opposition to the hostile environment and his threat of suit — requiring a jury to sort out which factor actually motivated the employer. Id. The opinion cited to other authorities holding that summary judgment is inappropriate where there is a conflict between an employer's evaluation of subjective criteria and the employee's evidence of proscribed animus. Id. at 648-649 (citing e.g., Tomasso v. Boeing Co., 445 F.3d 702, 707-708 (3d Cir. 2006) (finding question of fact on pretext in age discrimination case where employee and supervisor "tell radically different stories" about evaluation process)).

Our case is starkly different, because the parties do not tell "radically different stories." Plaintiff has failed to produce any evidence that Defendants were motivated by age animus. Thus, even utilizing the "careful analysis" for termination decisions predicated on subjective criteria, discussed in Yazdian, id. at 648, there are no competing interpretations of the evidence

17

that a jury must sort out. Our case is also different, because Defendants point to more than just an ephemeral "tone" as their concern with Plaintiff; they point to concrete episodes of dissatisfactory performance, in the form of Plaintiff's unwillingness to participate in certain cross-brand marketing efforts and insufficient support to the Faygo sales staff. Finally, Yazdian did not hold that an employee's "tone" is not a legitimate basis for a termination decision; indeed, the court held that "communication style" was an acceptable reason. Id. at 652-653. However, summary judgment was not appropriate in Yazdian, because there were two reasonable interpretations to the evidence. Id. Conversely, Plaintiff's unprofessional and disrespectful communications, along with his underperformance in certain areas, support a grant of summary judgment in the absence of countervailing evidence supporting a finding of pretext. Consequently, Yazdian does not compel or counsel denying summary judgment to Defendants.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion (Dkt. 54) is granted, and Plaintiff's motion (Dkt. 55) is denied, as moot. A judgment will be entered contemporaneously with this Opinion and Order.

SO ORDERED.

Dated: August 10, 2016  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2016.

  s/Karri Sandusky
  Case Manager